UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

NORTHLAND INSURANCE COMPANY,

Plaintiff,

v.

GYMSTARS GYMNASTICS, INC; ALL STAR GYMNASTICS INC.; JANE GM DOE; and DOES 1 through 10, inclusive,

Defendants.

No. 2:19-cv-01015-MCE-AC

**MEMORANDUM AND ORDER**

Through this action, Plaintiff Northland Insurance Company ("Plaintiff") seeks a declaratory judgment that it owes no coverage for an action brought against Defendants Gymstars Gymnastics ("Gymstars") and All Star Gymnastics ("All Star" and collectively with Gymstars, "Gym Defendants") in El Dorado County Superior Court. Presently before the Court is Gym Defendants' Motion to Stay the instant federal action pending resolution of the underlying state court action. ECF No. 13. This matter has been fully briefed. ECF Nos. 18, 19. For the reasons set forth below, Gym Defendants' Motion is DENIED.[1]

---

[1] Because oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs. E.D. Local Rule 230(g).

1

# BACKGROUND[2]

Plaintiff provided Commercial General Liability insurance coverage to Gymstars for annual policy periods effective March 15, 2001, to March 15, 2004, and to All Star for annual policy periods effective July 13, 2001, to July 13, 2003 (the "Policies").  Under the Coverage A insuring agreement, Plaintiff covers those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" which is caused by an "occurrence" and which takes place during the policy period.  Under the Coverage B insuring agreement, Plaintiff covers those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" which is caused by an offense arising out of the insured's business, but only if the offense was committed during the policy period.

The Policies specify that Plaintiff will have no duty to defend the insureds against any "suit" seeking damages to which this insurance does not apply.  Significantly, the Policies contain the following endorsements:

**EXCLUSION – PHYSICAL/SEXUAL ABUSE**

> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> This insurance does not apply to any "bodily injury," "property damage," "personal injury," "advertising injury," or medical expense arising out of:
>
> 1. The actual, alleged, or threatened physical abuse, sexual abuse or molestation by anyone.
>
> 2. The investigation, hiring, training, placement, supervision, or retention of anyone who engages or has engaged in physical abuse, sexual abuse or molestation.  This endorsement applies whether damages arise from an act or failure to act.
>
> 3. The reporting of or failure to report to authorities any physical abuse, sexual abuse, or molestation.

---

[2] The following recitation of facts is taken, sometimes verbatim, from Plaintiff's Complaint.  ECF No. 1.

***

**EXCLUSION – ASSAULT OR BATTERY**

> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> This insurance does not apply to "bodily injury," "property damage," "personal injury," "advertising injury," or medical expense arising out of assault and battery or out of any act or omission in connection with the prevention or suppression of an assault or battery, whether caused by or at the instigation or direction of the insured, an "employee" or patron of the insured, or any other person.

On February 13, 2018, Jane Doe initiated a lawsuit against Gym Defendants and DOE 1, a gym coach employed by Gym Defendants, in El Dorado County Superior Court for sexual, physical, mental, and emotional abuse ("Underlying Lawsuit"). The complaint alleges that between 1999 and 2002, DOE 1 sexually abused Jane Doe when she was 15 to 18 years old. Jane Doe further alleges that despite prior reports of DOE 1's misconduct, he was allowed by Gym Defendants to continue his sexual abuse of Jane Doe. The Underlying Lawsuit asserts the following causes of action: (1) Sexual Harassment against DOE I and Gym Defendants; (2) Sexual Battery against DOE I; (3) Assault against DOE 1; (4) Gender Violence against DOE 1; (5) Intentional Infliction of Emotional Distress against DOE I and Gym Defendants; (6) Negligence against Gym Defendants; (7) Negligent Supervision against Gym Defendants; (8) Negligent Hiring/Retention against Gym Defendants; (9) Negligent Failure to Warn, Train or Educate against Gym Defendants; and (10) Constructive Fraud against DOE I and Gym Defendants.

On May 15, 2018, Plaintiff received notice of the Underlying Lawsuit. Plaintiff agreed to provide Gym Defendants a defense subject to a complete reservation of rights, including the right to seek reimbursement of defense costs. On June 3, 2019, Plaintiff filed the current coverage action, asserting causes of action for declaratory relief and

///

reimbursement of defense costs.[3]  Plaintiff seeks adjudications that it owes no duty to defend or indemnify Gym Defendants under the Policies in connection with the Underlying Lawsuit.  Plaintiff alleges that based on the plain and clear terms of the Policies and California law, Jane Doe's claims in the Underlying Lawsuit are not covered or potentially covered.  A trial is scheduled for May 2020 but Gym Defendants state that discovery is still ongoing.  Mem. ISO Mot. Stay, ECF No. 13-1, at 5:3–5.

## STANDARD

The power to issue a motion to stay derives from a federal district court's power to control its docket and ensure that cases before it are justly determined.  Levya v. Certified Grocers of Cal., Ltd., 593 F.2d 857, 864–65 (9th Cir.1979), cert. denied, 444 U.S. 827, 100 S. Ct. 51, 62 L. Ed.2d 34 (1979).  Indeed, "a trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case."  Id. at 863–64.  "This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court."  Id.  A federal district court has broad discretion in deciding whether to issue a stay.  Fed. Sav. & Loan Ins. Corp. v. Molinaro, 889 F.2d 899, 902 (9th Cir.1989).

## ANALYSIS

Whenever an insurer defends a third-party action against its insureds under a reservation of rights, "an a-typical insurer-insured relationship is created . . . . [F]actual determinations made in the coverage case, were that to be litigated first, could be

---

[3] Plaintiff also named Jane Doe as a Defendant in the present action "in order to bind her to the adjudications sought in its Declaratory Relief Action."  Pl.'s Opp., ECF No. 18, at 4 n.1.

4

1    binding in the third-party action to the disadvantage to the insured." Home Indem. Co. v.
2    Simson Lumber Co., 229 F. Supp. 2d 1075, 1091 (D. Or. 2001).  Thus, under California
3    law, when an insurer seeks a declaratory judgment under an insurance policy and there
4    is an underlying third-party action against the insureds, a stay of the declaratory relief
5    action pending resolution of the underlying third-party suit is appropriate "when the
6    coverage question turns on facts to be litigated in the underlying action." Montrose
7    Chem. Corp. v. Super. Ct. (Montrose I), 6 Cal. 4th 287, 301 (1993).  Granting a stay in
8    such cases serves to "eliminate the risk of inconsistent factual determinations that could
9    prejudice the insured." Id.  Such factual inconsistencies may arise "because the
10   [insurer's] duty to defend frequently turns on coverage, and . . . coverage frequently
11   turns on factual issues to be litigated in the third party liability action." Montrose I,
12   6 Cal. 4th at 305.  Federal courts in California have followed the Montrose rule.
13   OneBeacon Ins. Co. v. Parker, Kern, Nard & Wenzel, 1:09–CV–00257 AWI GSA, 2009
14   WL 2914203, at *4 (E.D. Cal. Sept. 9, 2009) (citing Cort v. St. Paul Fire & Marine Ins.
15   Cos., 311 F.3d 979 (9th Cir. 2002); Conestega Servs. Corp. v. Exec. Risk. Indem.,
16   312 F.3d 976 (9th Cir. 2002)).

17          Courts have noted three major concerns surrounding the trial of coverage issues
18   which necessarily turn upon facts to be litigated in the underlying action.  First, the
19   insurer, who is supposed to be defending the insured and with whom there is a special
20   relationship, is effectively attacking its insured and thus aiding the claimant in the
21   underlying suit. Haskel, Inc. v. Super. Ct., 33 Cal. App. 4th 963, 979 (1995) (citing
22   Montrose Chem. Corp. v. Super. Ct. (Montrose II), 25 Cal. App. 4th 902, 910 (1994)).  In
23   order to guard against such abuse, the Court must not permit the insurer to effectively
24   join forces with the third-party claimants in order to defeat coverage. Montrose II,
25   25 Cal. App. 4th at 909–10.

26          Second, litigating the coverage dispute while the underlying action is still pending
27   requires the insured to "fight a two front war, litigating not only with the underlying
28   claimant, but also expending precious resources fighting an insurer over coverage

5

questions." Haskel, Inc. 33 Cal. App. 4th at 979 (citing Montrose II, 25 Cal. App. 4th at 910). Fighting such a two-front war "effectively undercuts one of the primary reasons for purchasing liability insurance." Id.

Third, "there is a real risk that, if the declaratory relief action proceeds to judgment before the underlying action is resolved, the insured could be collaterally estopped to contest issues in the latter by the results in the former." Id.

"It is only when there is no potential conflict between the trial of the coverage dispute and the underlying action that an insurer can obtain an early trial date and resolution of its claim that coverage does not exist." Montrose II, 25 Cal. App. 4th at 910 (emphasis added). When such a potential conflict exists, a district court should enter a stay. "By contrast, when the coverage question is logically unrelated to the issues of consequence in the underlying judgment, the declaratory relief action may properly proceed to judgment." Montrose I, 6 Cal.4th at 302. Put differently, it is only when there is no overlap of issues that the Court has discretion to not order a stay. Great Am. Ins. Co. v. Super. Ct., 178 Cal. App. 4th 221, 235–36 (2009).

In the present case, Plaintiff is defending Gym Defendants in the Underlying Lawsuit under a reservation of rights. Gym Defendants' liability in the Underlying Lawsuit hinges on Jane Doe establishing that Gym Defendants knew or should have known of DOE I's sexual abuse of Jane Doe because they received reports of misconduct. See Compl., ECF No. 1, at 3 ¶ 14. In order to demonstrate no duty to defend, Gym Defendants must prove the existence of a potential for coverage, while Plaintiff must establish the absence of any such potential. Montrose I, 6 Cal. 4th at 300. More specifically, Plaintiff must prove conclusively that it has no duty to defend Gym Defendants because all the facts alleged in the Underlying Lawsuit, and known to Plaintiff outside the allegations in the Underlying Lawsuit, necessarily fall within the Physical/Sexual Abuse exclusion, the Assault or Battery exclusion, or some other coverage limitation. See States Ins. Co. v. Progressive Cas. Ins. Co., 180 Cal. App. 4th 18, 26 (1995).

1    Gym Defendants allege that Plaintiff's declaratory judgment action overlaps with
2 the Underlying Lawsuit, and, as a result, this Court will be forced to resolve factual
3 issues that are intertwined with the Underlying Lawsuit.  Mem. ISO Mot. Stay, ECF
4 No. 13-1, at 10.  For example, the Court will have to address whether "all of the
5 allegations of non-sexual conduct are inseparable from [DOE I's] sexual abuse." Id. at
6 10:15–16.  Plaintiff, on the other hand, asserts that the issue in this declaratory judgment
7 action is whether the allegations made by Jane Doe in the Underlying Lawsuit fall within
8 the exclusions of the Policies.  Pl.'s Opp. Mot. Stay, ECF No. 18, at 9:4–10.  In other
9 words, the declaratory judgment action can be resolved by comparing the pertinent
10 terms of the Policies to the allegations in the Underlying Lawsuit.

11   Because the limited issue asserted in this declaratory judgment action is separate
12 from any underlying claim between Jane Doe and Gym Defendants, the Court can
13 adjudicate the issue in this action without rendering conclusions regarding the
14 Underlying Lawsuit.  "The extent of coverage does not depend on whether defendants
15 are found liable in the underlying action.  The declaratory judgment action simply seeks
16 a determination as to whether the allegations in the underlying action are of the nature
17 intended to be covered by the insurance policy." Allstate Ins. Co. v. Huerta,
18 No. S-06-856 LKK/KJM, 2006 WL 2655239, at *3 (E.D. Cal. Sept. 13, 2006).  Similarly,
19 Plaintiff only seeks a determination as to whether the Policies encompass the allegations
20 in the Underlying Lawsuit, and Plaintiff takes no position on an underlying claim.
21 Moreover, while the Court's analysis of the Policies involves legal conclusions, resolution
22 of a claim against Gym Defendants will require factual determinations.  Because the
23 coverage issues do not turn on the Underlying Lawsuit's liability questions, this Court
24 can adjudicate the coverage obligations without impeding any underlying claim.

25   Furthermore, because the Court does not find a conflict between the declaratory
26 judgment action and an underlying action, the concerns that generally favor the Court
27 granting a motion to stay are not present in this case.  First, the Court is not persuaded
28 that Plaintiff will attack Gym Defendants and offer aid to Jane Doe in the Underlying

Lawsuit. Plaintiff appears to assert no position regarding claims by Jane Doe against Gym Defendants. Second, the present situation will not require Gym Defendants to fight a two-front war. Gym Defendants have not demonstrated a clear case of hardship or inequity in having to defend themselves in two separate actions, especially since Plaintiff is currently defending Gym Defendants in the Underlying Lawsuit. See Great Am. Assurance Co. v. M.S. Indus. Sheet Metal, Inc., Case No. SACV 11-754-JST (MLGx), 2011 WL 13228037, at *3 (C.D. Cal. Sept. 22, 2011). Third, the Court does not find that this declaratory judgment action will collaterally estop Plaintiff and Gym Defendants from contesting issues in the Underlying Lawsuit. Gym Defendants are not only able to argue that the allegations in the Underlying Lawsuit are covered by the insurance policy while at the same time not admitting to the truth of the Underlying Lawsuit, but "the mere possibility of collateral estoppel does not justify a stay of the declaratory proceeding." M.D. Sass Investors Servs., Inc. v. Reliance Ins. Co., 810 F. Supp. 1082, 1090 (N.D. Cal. 1992).

Given the foregoing, the Court does not find a potential conflict between the coverage dispute in this Court and the Underlying Lawsuit. Because the coverage question can be resolved without litigating facts that may be disputed in the Underlying Lawsuit, Gym Defendants' Motion to Stay is DENIED.

## CONCLUSION

For the foregoing reasons, Gym Defendants' Motion to Stay, ECF No. 13, is DENIED.

IT IS SO ORDERED.

Dated: April 28, 2020

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE